OPINION
Plaintiffs-appellants, Thomas and Doris Kitchen, appeal the decision of the Brown County Court of Common Pleas granting summary judgment to defendants-appellees/cross-appellants, Lake Lorelei Property Owners Association, Inc., ("Association") and Bill Wilson. The Association cross-appeals the common pleas court's decision denying its motion for attorney fees. We affirm in part and reverse in part the decision of the trial court.
Thomas and Doris Kitchen are property owners in the private gated community known as Lake Lorelei in Brown County, Ohio. The Association was incorporated as a nonprofit corporation under Ohio law in 1967 for the purpose of administering and regulating Lake Lorelei. By purchasing property at Lake Lorelei, the Kitchens agreed to be bound by the deed restrictions as well as the various rules and regulations of the Association.
In August 2000, a bridge on Lorelei Drive was closed for necessary repairs. As a result, property owners on the east side of the lake were required to travel around the west perimeter of the lake to reach the front entrance of the gated community. Mrs. Kitchen asked the Board of Trustees of the Association to open the "back gate" at the northeast corner of the lake while the bridge was closed. The Board specifically told Mrs. Kitchen that the back gate was not to be used as a means of ingress or egress.
Mrs. Kitchen cut the chain on the back gate and directed traffic through the back gate on August 8, 2000. Mrs. Kitchen admitted that she directed 43 cars through the back gate. The Association replaced the chain and informed Kitchen again that the gate was not to be opened. However, Mrs. Kitchen cut the chain and directed traffic through the back gate a second time.
On August 23, 2000, the Executive Committee of the Board held a hearing that Mrs. Kitchen chose not to attend. At the meeting the Executive Committee fined Mrs. Kitchen $139.81 for the vandalism and the replacement of the property she damaged. Mrs. Kitchen was given an opportunity to appeal the Executive Committee's decision. Mrs. Kitchen chose not to appeal.
Mrs. Kitchen failed to pay the fine. As a result Mrs. Kitchen was deemed a member not in good standing. Only members in good standing "will be entitled to the use of the various community areas, beaches, lakes, and other association facilities." Association Code, Art. II, Section 1, paragraph D. Therefore, when Mrs. Kitchen entered the Lake Lorelei clubhouse she was asked to leave. Furthermore, Mrs. Kitchen was not recognized to have speaking privileges granted to a member in good standing at the October 21, 2000 town meeting held in the clubhouse. Therefore, she was also asked to leave the town meeting.
On October 26, 2000, the Kitchens filed an action against the Association and Bill Wilson, the head of the Lake Lorelei Executive Committee. The Kitchens requested a temporary restraining order, and preliminary and permanent injunctions preventing the Association from further interfering with their rights to utilize association property. On April 26, 2001, the Association filed for summary judgment. The court found there was no genuine issue of any material fact and the Association was entitled to judgment. The Kitchens appeal raising two assignments of error:
Assignment of Error No. 1:
 "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AGAINST APPELLANT WHEN THE EVIDENCE BEFORE THE COURT SHOULD HAVE CAUSED THE COURT TO CONCLUDE THAT THE [ASSOCIATION] HAD NO AUTHORITY TO DECLARE APPELLANT TO BE A MEMBER NOT IN GOOD STANDING."
The Kitchens argue the Board cannot unilaterally modify the provisions of the code of regulation of the Association. The Kitchens argue changes made by the Board to the definition of "not in good standing" in the Regulations and Covenants/Restrictions when it passed Resolution 2000-04 on April 7, 2000, were invalid and therefore do not revise or amend the Association rules effective August 25, 1998.
However, even if the amendment was invalid, the Association rules, effective August 25, 1998, allow for Mrs. Kitchen to be deemed a member not in good standing. Association Rule number 1, "Responsibility," states in section (A)(1) that the "property owner is liable for the payment of any fine levied against a family member, guest, himself or renter. Failure to pay a fine within the prescribed time will result in the property owner being deemed `not in good standing.'" Association Rule number 1, "Responsibility," section (B)(2)(c) states, "fines not paid within (15) days for the Lake Lorelei violation will deem the property owner `not in good standing.'" Therefore, the issue of whether Resolution 2000-04 was valid is immaterial to whether Mrs. Kitchen could be deemed a member not in good standing. If the rules effective August 25, 1998 were not amended, the Association still had the authority under those rules to declare Mrs. Kitchen a member not in good standing.
The Kitchens argue that the definition of a member not in good standing, as per the Code of Regulations of the Association, is only when a "member's dues, service fee and/or special assessments become in arrears in whole or in part." Therefore, the Kitchens argue that because there is no mention of fines in the definition, refusing to pay the fine does not make Mrs. Kitchen a member not in good standing.[1] Furthermore, the Kitchens argue the Association has no authority to "redefine the definition of a member not in good standing" and cites as authority Woodcreek Association, Inc. v. Bingle
(1991), 73 Ohio App.3d 506.
In Woodcreek, the Woodcreek Association interpreted a restrictive covenant against specific antennas to include satellite dishes. The court in Woodcreek held, "[t]he Association cannot, therefore, be accorded the authority to interpret Section 10.2(r) so as to create a ban on satellite dishes where the language does not support such a ban." Woodcreek, 73 Ohio App.3d at 509.
The language of Association Rule number 1, "Responsibility," sections (A)(1) and (B)(2)(c) supports classifying a member not in good standing for not paying a fine. While the Code of Regulations does not specifically include nonpayment of fines within the definition of a member not in good standing, the Code authorizes the rules and states, "the board has the authority to adopt, interpret and enforce by action of the Board, resolutions and rules governing the operations and affairs of the Association." Association Code of Regulations, Art. V, section 1(A). The Covenants/Restrictions state that members agree to abide by the rules and regulations of the Association. See Association Covenants/Restriction number 8. Therefore, the Board has the authority to rule Mrs. Kitchen a member not in good standing as stated in the rules for failure to pay a fine and the Board's actions were reasonable. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND BY GRANTING SUMMARY JUDGMENT AGAINST APPELLANT WHEN APPELLANT WAS NOT AFFORDED DUE PROCESS IN CONNECTION WITH THE CITATION, HEARING AND ULTIMATE ADJUDICATION OF THE FINE AGAINST HER."
Property associations are required to comply with general principals of due process. While property associations are not required to afford the same level of due process to their members as governmental organizations, they are required to comply with the due process guarantees set forth in their rules and regulations, as well as the general principals of due process. Due process in regard to private organizations involves: 1) the absence of bad faith; 2) compliance with the organization's constitution and bylaws; and 3) natural justice. SeeNormali v. C.A.L.U. (1974), 39 Ohio App.2d 25, 29. Ohio courts have interpreted "natural justice" to mean reasonable notice and a hearing with the opportunity to be heard. See Bay v. Anderson Hills, Inc. (1984), 19 Ohio App.3d 136, 137.
Mrs. Kitchen admitted to cutting the chain on the back gate and waving cars through. The fine was assessed in good faith based upon her admission and based upon the fact that she was specifically informed not to open the gate after having done so once before. Association Rule number 9, "Miscellaneous Rules," section (D) states, "[p]hysical changes to Association property, roads, drives, * * * must not be done without the written approval of the Board of Trustees." The Board did not approve the removal of the chain from the back gate. Therefore, Mrs. Kitchen was in violation of Association Rule number 9(D).
Association Rule number 1 (B)(2), "Warnings and Citations for Rule Violations" states in paragraph (a), "a citation or warning will be issued to the violator." Association Rule number 1 (B)(2), "Fines and Rights of Appeal" states in paragraph (a), "the fine indicated upon the citation must be paid to the Association within fifteen days * * *." Association Rule number 1 (A)(1) states, "[p]roperty owners must bear the ultimate responsibility for violations of Lake Lorelei rules * * * therefore, the responsibility for payment of fines is with the property owner." Consequently, the decision of the Board to cite and fine Mrs. Kitchen was in compliance with the organization's constitution and bylaws.
The fine is also consistent with natural justice since Mrs. Kitchen received reasonable notice for a hearing with the opportunity to be heard. The Association sent a letter to Mrs. Kitchen on August 20, 2000 stating, "you informed persons in our office that you had cut the chain off the back gate and left it unattended. This act of vandalism was later confirmed by you * * *. For this act of vandalism, * * * you are cited for vandalism to appear before the Executive Committee that will meet Wednesday, August 23, 2000."
Mrs. Kitchen acknowledged receiving the letter but stated she refused to attend the hearing. Mrs. Kitchen refused to attend the hearing based upon the belief that "all it's going to do is cause hard feelings" because "Wednesday night is the same night all of the people are up at the clubhouse playing cards." The Association sent Mrs. Kitchen another letter dated August 28, 2000, which states, "you are cited for vandalism * * * [t]his notifies you within fifteen days of the meeting at which the above action was taken by the Executive Committee. If you wish to appeal the disposition you must notify the Lake Office within 15 days of receipt of this letter for a hearing at the next scheduled meeting."
Mrs. Kitchen failed to request an appeal of the disposition. Mrs. Kitchen was afforded due process in connection with the citation, hearing and adjudication of the fine against her. Mrs. Kitchen failed to exercise her rights. Therefore, the trial court did not err by granting summary judgment to the Association. Consequently, the second assignment of error is overruled.
In its cross-appeal, the Association presents the following:
Cross-Assignment of Error No. 1:
 "THE TRIAL COURT ERRED IN OVERRULING [THE ASSOCIATION'S] MOTION FOR ATTORNEY'S FEES WHEN THE GOVERNING DOCUMENTS, INCLUDING THE CODE OF REGULATIONS, THE COVENANTS/RESTRICTIONS AND THE RULES OF THE [ASSOCIATION], AND OHIO LAW CLEARLY AUTHORIZE AND PERMIT [THE ASSOCIATION] TO RECOVER ITS ATTORNEY'S FEES ACCRUED AS A RESULT OF ITS COLLECTION OF THE UNPAID FINE."
The Association argues that its governing instruments authorize the Board to collect attorney fees from any member whose failure to pay fines, dues and assessments forces the Association to institute a civil action for the collection thereof. Association Rule number 1 section (B)(2) paragraph (d) states, "attorney's fees and the recovery of fines and court costs will be included in a civil action against the violator if the need arises." The Rules authorize the Board to collect attorney fees from a member who violates the rules requiring the Association to institute a civil action.
It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. The Bluffs of Wildwood Homeowners' Assn., Inc. v. Dinkel
(1994), 96 Ohio App.3d 278, 282, citing, Nottingdale Homeowners'Association, Inc. v. Darby (1987), 33 Ohio St.3d 32, 36. The Supreme Court of Ohio has held that provisions in a deed restriction or bylaw of a community association which requires a defaulting owner to pay attorneys fees incurred by the owners' association, are enforceable if the fees awarded are fair, just and reasonable. See NottingdaleHomeowners' Association, Inc., 33 Ohio St.3d at 37.
Therefore, the cross-assignment of error is well-taken. The judgment of the trial court overruling the Association's motion for attorney's fees is reversed. The issue is remanded to the trial court for determination on the amount of attorney fees.
Judgment affirmed in part, reversed in part, and remanded.
YOUNG and VALEN, JJ., concur.
[1] The Kitchens argue the definition of "member not in good standing" should be strictly construed and cite as authority Providence ManorHomeowners Association v. Connor (1997), 118 Ohio App.3d 895. The court in Providence held that agreements restricting the use of real estate are generally disfavored and therefore are strictly construed. The agreement in this case did not restrict the use of real estate and did not prevent the Kitchens from using their own property. Therefore, it is not necessary to strictly construe the agreement.